IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN DEEREN,

                                                                                  OPINION AND ORDER

                    Plaintiff,

                                                                                  20-cv-508-bbc

     v.

RICHARD ANDERSON,
BRETT SEMINGSON,
HARLAN REINDERS AND
TREMPEALEAU COUNTY,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Kevin Deeren filed this lawsuit against defendants Trempealeau County, former sheriff Richard Anderson, current sheriff Brett Semingson and chief deputy Harlan Reinders, contending that defendants retaliated against him in violation of his First Amendment rights because plaintiff ran a campaign against Semingson for county sheriff. Plaintiff also contends that defendants violated his rights under Wisconsin law by interfering with his contractual relationships, conspiring to injure his business reputation and blacklisting him from future employment.

      Defendants filed a motion to dismiss plaintiff's original complaint, arguing that plaintiff's allegations failed to state a First Amendment or state law claim against the individual defendants or the county, and that his claims were barred by immunity defenses. Dkt. #6. Plaintiff responded by filing an amended complaint that mooted defendants' motion. Dkt. #8. Defendants then filed a motion to dismiss plaintiff's amended complaint, raising the same arguments that they had made previously. Dkt. #12. Plaintiff filed a brief in opposition to the

1

motion, and also a motion for leave to file a second amended complaint to further address defendants' arguments. Dkt. #17. Plaintiff's most recent proposed second amended complaint does not change my analysis of defendants' motion, so I will deny plaintiff leave to file the second amended complaint as unnecessary. I will also deny defendants' motion to dismiss. Accepting plaintiff's allegations as true, I conclude that plaintiff has stated a First Amendment retaliation claim and claims under state law.

ALLEGATIONS OF FACT

Plaintiff Kevin Deeren was a deputy sheriff for Trempealeau County from September 8, 2015 until his resignation from the department on May 4, 2018. Defendant Richard Anderson was the county sheriff from July 2007 until January 8, 2019, when defendant Brett Semingson became the sheriff. Defendant Harlan Reinders has been chief deputy sheriff for the county since January 2015.

In 2017, defendant Anderson announced privately that he would not seek re-election when his term ended in 2018. On November 27, 2017, plaintiff told Anderson that he planned to run for sheriff. That same day, Anderson demoted plaintiff from patrol sergeant to patrol deputy. On December 1, Anderson announced plaintiff's demotion to other sheriff deputies in the department, and to a business owner who was influential in local politics. Also on December 1, defendant Semingson issued a memo directing sheriff deputies to increase patrols in plaintiff's neighborhood. On December 17, plaintiff was reinstated to patrol sergeant, with backpay, by Trempealeau County human resources because Anderson had failed to follow state law in demoting plaintiff.

During plaintiff's campaign for sheriff, he gave presentations to numerous community organizations, wrote letters to the editor in local newspapers, published Facebook messages and disseminated campaign material indicating that he intended to make changes in the management of the Trempealeau County's Sheriff's Department. Plaintiff addressed the drug problems in the county relating to methamphetamine and heroin. He also talked about school safety, training, fiscal responsibility and resource management.

In January 2018, the sheriff's department requested records from South Carolina relating to plaintiff's arrest there in 2007. The charges against plaintiff were false, had been dismissed and plaintiff's record had been expunged pursuant to South Carolina state law. Trempealeau County was aware of the arrest, as a result of the background check performed when plaintiff was hired by the county in 2015. Semingson and Reinders disseminated the information about plaintiff's prior arrest to the public, at the direction of or with the knowledge of Anderson. In February 2018, Anderson formally announced his retirement and endorsed Semingson for sheriff.

On April 6, 2018, Anderson issued a complaint accusing plaintiff of misconduct for failing to disclose his prior criminal charges on his application and during the interview process in 2015. Anderson made a recommendation to the grievance committee that plaintiff be terminated immediately. A few days later, plaintiff was placed on leave without pay. Plaintiff filed a grievance in response to the complaint, and a hearing was held on the grievance on April 24, 2018. On April 27, the grievance committee issued a decision, finding that just cause for termination did not exist and declining to discharge plaintiff.

During the campaign, local newspapers and other parties requested the personnel files

3

of plaintiff and Semingson. The county released Semingson's file, including awards and commendations, but did not release a complaint, lawsuit or investigations about Semingson's conduct. The county released plaintiff's file, but did not release awards or commendations that he had received. Semingson prevailed in the sheriff's election, and plaintiff resigned from his position with the sheriff's office in May 2018.

In 2019, after plaintiff resigned, he was hired and placed on the roster of reserve police officers with the City of Osseo, Wisconsin. In March of 2019, Semingson contacted the Osseo police chief and demanded that the chief not schedule plaintiff as a reserve officer. Plaintiff was not scheduled to work for the department.

In June 2019, plaintiff applied for a full-time position as a police officer with the City of Blair, Wisconsin. After he applied, Deputy Kyle Myher, a member of the Trempealeau County Sheriff's Department, told the city that the county would eliminate its access to the ProPhoenix system (a public safety software system) if Blair hired plaintiff. Plaintiff alleges that Semingson and Reinders directed Deputy Myher to make this contact. Plaintiff was not interviewed for the Blair position.

OPINION

Plaintiff raises four claims in his amended complaint:

(1) First Amendment retaliation against all defendants;

(2) intentional inference with a contractual relationship, against Semingson and Reinders;

(3) injury to business under Wis. Stat. § 134.01, against Semingson and Reinders; and

(4) blacklisting of employees under Wis. Stat. § 134.02, against Semingson and Reinders.

Defendants have moved for dismissal of all plaintiff's claims for failure to state a claim and on immunity grounds. To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must allege facts sufficient to state a plausible claim for relief, that is, facts that allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. Firestone Financial Corp. v. Meyer, 796 F.3d 822, 826 (7th Cir. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## A. First Amendment Retaliation

To plead a First Amendment retaliation claim, a plaintiff must allege facts suggesting that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action. McGreal v. Village of Orland Park, 850 F.3d 308, 312 (7th Cir. 2017); Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009).

Defendants do not dispute that plaintiff's speech in support of his campaign for sheriff was constitutionally protected. They also do no dispute that plaintiff has alleged facts suggesting that plaintiff's protected speech was at least a motivating factor in defendants' alleged adverse actions against plaintiff. However, they dispute whether plaintiff's allegations satisfy the second prong of the retaliation analysis: whether plaintiff suffered a deprivation that would likely deter First Amendment activity in the future. The test for the second prong is objective. The relevant inquiry is whether plaintiff has alleged facts suggesting that defendants' conduct would likely deter a person of ordinary firmness from continuing to engage in protected activity. Surita v.

5

Hyde, 665 F.3d 860, 878 (7th Cir. 2011).

Defendants make two primary arguments as to why plaintiff cannot satisfy this prong. First, defendants say that plaintiff cannot complain about adverse actions taken by defendants that were intended to undermine plaintiff as an electoral candidate. Defendants point out that some courts have concluded that attacking the character of a politician, such as by accusing the politician of a crime, is not sufficient to sustain a retaliation claim. See, e.g., Werkheiser v. Pocono Township, 780 F.3d 172, 181 (3d Cir. 2015) (First Amendment not intended to "guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics"); Nordstrom v. Town of Stettin, No. 16-CV-616-JDP, 2017 WL 2116718, at *4 (W.D. Wis. May 15, 2017) ("An accusation of criminal misconduct, even when it leads to an investigation—criminal or otherwise—is not a deprivation under the First Amendment, especially when the accusation is made by one politician against his political opponent."); Footit v. Van De Hey, No. 04-cv-459, 2005 WL 1563334, at *6 (E.D. Wis. June 29, 2005) (concluding that the plaintiff failed to state a retaliation claim against his fellow board members when "[t]hey simply reported to the district attorney their suspicions that Footit had violated the law and asked him to investigate"). Defendants argue that plaintiff's allegations suggest only that defendants attacked his character as a potential sheriff and thus, the allegations are insufficient to state a First Amendment retaliation claim.

Defendants' argument might be persuasive if plaintiff's only allegations against defendants were that they leaked his dismissed South Carolina criminal case to the public and failed to release his commendations and awards. However, plaintiff alleges that defendants did more than attack his character. He alleges that after he announced his candidacy for sheriff,

defendant Anderson demoted him illegally and announced the illegal demotion to his colleagues and the public. Defendants then increased patrols in plaintiff's neighborhood without legitimate justification, sought to terminate his employment with an unfounded disciplinary charge, required him to take leave without pay and acted to prevent him from obtaining future employment. Defendants cite no legal authority suggesting that an electoral candidate should expect to be demoted illegally, embarrassed by his superiors in front of his colleagues, harassed with increased patrols in his neighborhood, subjected to an unfounded disciplinary charge, forced to take leave without pay and blacklisted from future employment opportunities. Therefore, plaintiff's position as an electoral candidate does not doom his retaliation claim.

Defendants' second argument is that plaintiff cannot complain about actions taken by defendant Anderson, in his role as sheriff, because "actions by a sheriff are unique in the First Amendment context." Dfts.' Br., dkt. #13 at 10-11. Defendants argue that it is "clearly established" in this circuit that sheriffs can discipline or demote deputies without violating the First Amendment, id. at 14-15, but they are interpreting the case law too broadly.

Defendants' argument relies on cases involving dismissal or demotion of "policymaking" government employees. Generally, dismissal of a public employee on the basis of political affiliation or political position violates the employee's First Amendment rights. Bogart v. Vermilion County, 909 F.3d 210, 213 (7th Cir. 2018). There is an exception when party affiliation is an appropriate requirement for the position involved. Id. This "policymaking exception "derives from the principles of representative government: without political alignment in certain positions, employees occupying those positions could obstruct the implementation of policies presumably sanctioned by the electorate, who placed the current administration in

7

power." Hanson v. LeVan, 967 F.3d 584, 592 (7th Cir. 2020).

Policymaking employees can be dismissed or demoted on the basis of their political positions without running afoul of the First Amendment. Id. at 593-94. But the policymaking exception applies only if the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. Id. Political affiliation is a legitimate criteria for government employment only for those positions that involve meaningful input into "government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." Kiddy-Brown v. Blagojevich, 408 F.3d 346, 355 (7th Cir. 2005) (citation omitted).

Defendants cite to cases in which the Court of Appeals for the Seventh Circuit concluded that a sheriff could terminate a deputy in a small jurisdiction for political reasons, without violating the First Amendment, because the deputy was a "policy making employee." Dfts.' Br., dkt. #13, at 15 (citing cases). However, in other cases, the court of appeals has questioned whether all sheriff deputies can be considered policy making employees. See, e.g., Fuerst v. Clarke, 454 F.3d 770, 772-73 (7th Cir. 2006) (disputed issue as to whether deputy sheriff was policymaking employee); Ruffino v. Sheahan, 218 F.3d 697, 700–01 (7th Cir. 2000) (expressing doubt that Cook County deputy sheriffs could all be considered "policymakers for whom the sheriff had a legitimate interest in insisting on personal and political loyalty"). See also Heggen v. Lee, 284 F.3d 675, 686 (6th Cir. 2002) (finding that deputy sheriffs could not be dismissed under patronage exception). The court of appeals has also stated, repeatedly, that the application of the policymaker exception does not depend on a job title, but depends instead on the particular job functions of the employees in question. Hanson, 967 F.3d at 593 (citing

8

cases). And the court has stated that job functions may not be determinable at the pleading stage. Id. (not enough information at pleading stage to determine whether deputy assessor position was policymaking position); Kiddy-Brown, 408 F.3d at 351 (not enough information at pleading stage to determine whether warden position was position for which political affiliation was appropriate requirement); Meeks v. Grimes, 779 F.2d 417, 420 (7th Cir. 1985) (not enough information to determine whether court bailiffs were policymaking employees). In this instance, I cannot determine at the pleading stage whether plaintiff's job as a deputy sheriff was a policymaking position from which he could be terminated without implicating the First Amendment.

More important, this is not a retaliatory termination case. Plaintiff is not complaining that he was terminated for political reasons. Instead, plaintiff alleges that he was treated unfairly because he was running against defendant Semingson for sheriff, and that the unfair treatment continued even after he resigned his employment with the sheriff's office. The court of appeals has never held that county sheriffs have free rein to discipline or harass deputies and former deputies for political reasons without violating the First Amendment. Instead, the court has held the opposite. Wallace v. Benware, 67 F.3d 655, 662 (7th Cir. 1995) (harassment of politically disloyal deputy violated First Amendment) (citing Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) (campaign of harassment or disciplinary actions based on political affiliation can violate First Amendment by chilling exercise of public employee's constitutional rights); Ruffino, 218 F.3d at 701 (harassment of deputies for political reasons would violate First Amendment). Accepting all of plaintiff's allegations as true, a jury might agree that the totality of his allegations would dissuade a person of ordinary firmness from exercising his right to free speech.

9

Defendants argue that even if their alleged conduct could amount to First Amendment retaliation, they are entitled to qualified immunity in light of plaintiff's status as a politician and as a deputy sheriff. The defense of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Locke v. Haessig, 788 F.3d 662, 666 (7th Cir. 2015). "Clearly established" means that the existing precedent placed the statutory or constitutional question beyond debate at the time of the alleged violation, or the facts otherwise present the "rare obvious case" where a body of relevant precedent is unnecessary. Green v. Newport, 868 F.3d 629, 633 (7th Cir. 2017). In other words, a plaintiff must show that "every reasonable official would understand" that his actions violated a given right. Id.

At the time of the alleged retaliation, it was well established that a public employer was not permitted to retaliate against an employee who exercised his First Amendment speech rights. Miller v. Jones, 444 F.3d 929, 939 (7th Cir. 2006). It was also well established that a sheriff could not harass a deputy for political reasons. Wallace, 67 F.3d at 662. Moreover, even under the doctrine of qualified immunity, I must accept plaintiff's versions of events as true and draw reasonable inferences in his favor. Accepting plaintiff's account of his treatment as true, I conclude that no reasonable sheriff's office employee would think it was lawful to demote, discipline, harass and blacklist a sheriff's deputy because of his protected speech. Therefore, I will deny defendants' motion to dismiss plaintiff's First Amendment claims.

### B. Municipal Liability Claim

Defendants next argue that plaintiff's claim against Trempealeau County should be dismissed because plaintiff has not alleged facts sufficient to support a Monell claim against the county. The county may be liable for monetary damages under § 1983 if plaintiff can show that the alleged First Amendment violations were caused by: (1) an official policy adopted and promulgated by the entity's officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. Thomas v. Cook County Sheriff's Department, 604 F.3d 293, 303 (7th Cir. 2010) (citing Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978)). Defendants contend that plaintiff cannot prevail on a Monell claim because he fails to allege that a specific county policy, a widespread and well-settled practice or custom or a policymaker was the driving force behind the his alleged constitutional violations.

Defendants' arguments are not persuasive. Plaintiff alleges in his amended complaint that Trempealeau County has a custom or practice of permitting the sheriff's office to retaliate against deputies who run against an incumbent, and he alleges facts about Anderson's retaliation against another deputy in the past. Plaintiff also alleges that defendant Anderson had final policy-making authority with respect to some of the retaliatory actions. Defendants cite many cases suggesting that plaintiff's allegations would be insufficient to prove a Monell claim. However, these cases discuss the standard for proving a retaliation claim after facts have been developed and evidence has been presented to the courts. This case is at the pleading stage, and plaintiff is not required to prove a Monell claim in his complaint. He is required only to plead "sufficient factual matter" which, if accepted as true, "states a claim to relief that is plausible on

11

its face." Iqbal, 556 U.S. at 678.  The allegations in plaintiff's complaint are sufficient to meet this standard.

### C. State Law Claims

Defendants have also moved to dismiss plaintiff's state law claims for tortious interference with a contract, injury to business and blacklisting of employees.  Defendants contend that plaintiff's allegations do not state a claim under any of these legal theories and that, in any event, defendants are entitled to governmental immunity.

To plead a claim for tortious interference with a prospective contract under Wisconsin law, a plaintiff must allege that: (1) plaintiff had a contract or prospective contractual relationship with a third party; (2) defendant interfered with the relationship; (3) the interference was intentional; (4) there is a causal connection between the interference and the damages; and (5) the defendant was not justified or privileged to interfere.  Burbank Grease Services, LLC v. Sokolowski, 2006 WI 103, ¶ 44, 294 Wis. 2d 274, 717 N.W.2d 781.

To plead a claim for injury to business under Wis. Stat. § 134.01, a plaintiff must allege that (1) the defendants acted together; (2) with a common purpose to injure the plaintiff's reputation or business; (3) with malice; and (4) the plaintiff suffered financial harm.  Virnich v. Vorwald, 664 F.3d 206, 213 (7th Cir. 2011).  For the purposes of a § 134.01 claim, malice means "doing a harm malevolently for the sake of the harm as an end in itself, and not merely as a means to some further end legitimately desired [such as hurting someone else's business by competition]."  Id. (citation omitted).

To plead a claim for blacklisting, a plaintiff must allege that facts suggesting that (1) the

defendants acted together, (2) with malice, and (3) with a common purpose to prevent plaintiff from obtaining employment. Wis. Stat. § 134.02.

Plaintiff's allegations are sufficient to state a claim under any one of these three legal theories against Semingson and Reinders. He alleges that after he resigned from Trempealeau County, he sought employment with the City of Osseo and the City of Blair. He alleges that Semingson, Reinders or a deputy acting under their instruction, contacted Osseo and Blair and instructed them not to schedule or hire plaintiff. His allegations suggest that defendants intended to prevent him from obtaining employment and that defendants acted because plaintiff had run a campaign against Semingson. These allegations are sufficient at the pleading stage to suggest that Semingson and Reinders acted with malice to prevent plaintiff from obtaining employment.

Defendants argue that even if plaintiff's allegations are sufficient to state a claim, the claims should be dismissed because Wisconsin's discretionary immunity statute, Wis. Stat. § 893.80(4), bars suit against government subdivisions and public employees "for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions." I agree with defendants that the alleged actions taken by defendants were likely discretionary acts for which immunity is afforded under Wis. Stat. § 893.80(4). However, plaintiff's allegations are sufficient to invoke the exception to immunity for "malicious, willful and intentional" conduct applies. Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶ 26, 235 Wis. 2d 409, 425, 611 N.W.2d 693, 700 (recognizing four exceptions to government immunity statute). Plaintiff's allegations suggest that defendants may have acted maliciously to harm plaintiff because they resented his political campaign. At least at

13

the pleading stage, plaintiff's allegations are sufficient to survive a motion to dismiss based on an immunity defense.

ORDER

IT IS ORDERED that:

1. The motion to dismiss filed by defendants Trempealeau County, Richard Anderson, Brett Semingson and Harlan Reinders, dkt. #12, is DENIED.

2. Plaintiff Kevin Deeren's motion for leave to file a second amended complaint, dkt. #17, is DENIED as unnecessary.

3. Plaintiff's motion for leave to file a reply brief in support of his second amended complaint, dkt. #27, is DENIED as unnecessary.

Entered this 9th day of February, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge