IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN DEEREN,

OPINION AND ORDER

Plaintiff,

20-cv-508-bbc

v.

RICHARD ANDERSON,
BRETT SEMINGSON,
HARLAN REINDERS AND
TREMPEALEAU COUNTY,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Kevin Deeren filed this lawsuit against defendants Trempealeau County, former sheriff Richard Anderson, current sheriff Brett Semingson, and chief deputy Harlan Reinders, contending that defendants retaliated against him in violation of his First Amendment rights because plaintiff ran a campaign against Semingson for county sheriff. Plaintiff also contends that defendants violated his rights under Wisconsin law by interfering with his contractual relationships, conspiring to injure his business reputation, and blacklisting him from future employment.

Before the court is defendants' motion for summary judgment, in which they argue that plaintiff cannot prove any of his claims. Dkt. #36. Because defendants have shown that any adverse actions taken against plaintiff were unrelated to any First Amendment protected conduct, the motion will be granted. I will decline to retain supplemental jurisdiction over plaintiff's state law claims.

Also before the court is plaintiff's motion to clarify the record regarding the date on

which he announced his candidacy for sheriff.  Dkt. #89.  That motion will be granted. However, plaintiff's motion for leave to a sur-reply brief, dkt. #90, will be denied, because the parties' respective positions were adequately argued in the existing briefs.

From the parties' proposed findings of fact and the evidence in the record, I find the following to be undisputed unless otherwise noted.


UNDISPUTED FACTS

A.  The Parties

Plaintiff Kevin Deeren was a deputy sheriff for Trempealeau County from September 8, 2015 until he resigned from the department on May 4, 2018.  Defendant Richard Anderson was the county sheriff from July 2007 until January 8, 2019, when defendant Brett Semingson became the sheriff.  Defendant Harlan Reinders has been chief deputy sheriff for the county since December 2014.


B.  Plaintiff's 2007 Arrest

In October 2007, plaintiff  was arrested and charged with two counts of felony criminal sexual assault in South Carolina.  He worked as a police officer in the Chicago Police Department at the time.  After his arrest, plaintiff was released on bond, and he returned to Chicago.  The Chicago Police Department opened an internal affairs investigation into the sexual assault charges, and placed plaintiff on civilian duties from October 2007 to January 2009, while the investigation was ongoing.  During that time, plaintiff worked as a phone operator handling non-emergency calls for the department.

2

The sexual assault charges against plaintiff were ultimately dismissed. (Although it is not entirely clear from the evidence in the record, it appears that the accuser declined to testify against plaintiff.) Plaintiff's arrest record was expunged pursuant to South Carolina state law, and the Chicago Police Department concluded that the sexual assault charges against plaintiff were "not sustained." Plaintiff resumed his employment as a police officer with the Chicago Police Department in 2009.

## C. Trempealeau County's Hiring of Plaintiff

In 2014, plaintiff moved from Chicago to Trempealeau County. He applied to the Trempealeau County Sheriff's Department in December 2014. On his application, Deeren stated that he had been a police officer with the Chicago Police Department from August 2003 to the time of his application. He did not provide any information about the time period in which he acted as a phone operator, from October 2007 to January 2009. Plaintiff was interviewed, and he was asked whether he had received any citations or had any prior contact with law enforcement. Plaintiff responded that he had citation for driving the wrong way on a one way street and a "possible" speeding ticket. He did not disclose the 2007 felony sexual assault charge or his contacts with police relating to his arrest.

Lieutenant Paul Loesel was responsible for conducting a background investigation on plaintiff for Trempealeau County. Loesel ran a criminal history check on plaintiff through the National Instant Criminal Background Check System, which showed no entries for plaintiff. Loesel then requested that La Crosse County Sheriff's Department run a CLEAR report on plaintiff. (CLEAR is a commercial database operated by Thompson Reuters that provides

criminal history information and analytics about a person and their relatives and associates. Trempealeau County does not have a CLEAR account, which is why Loesel asked La Crosse to run the report on plaintiff.)  La Crosse provided the results of the CLEAR report to Loesel on April 14, 2015.  The CLEAR report included information about plaintiff's 2007 arrest and criminal charges in South Carolina.  However, the CLEAR report did not say how the charges were resolved.

Loesel does not recall reviewing the CLEAR report, but he had never before seen a case in which the CLEAR report provided additional information about law enforcement contacts that were not contained in the National Instant Criminal Background Check System report.  He recalls receiving the report, giving plaintiff's file to defendant Chief Deputy Reinders and telling Reinders to review it.  Reinders recalls receiving the file, but he does not recall looking at the CLEAR report.  Loesel and Reinders both state that if they had reviewed the report and seen the 2007 charges, they would have taken additional steps to investigate plaintiff.  Reinders would not have certified that plaintiff was eligible to work as a law enforcement officer without determining the disposition of the sexual assault charges because, if plaintiff had been convicted, he would not be eligible to handle a firearm or be a police officer.  However, nobody involved in the hiring process asked plaintiff about the sexual assault charges.

Plaintiff was hired as a patrol deputy for the county in May 2015.  Plaintiff was promoted to patrol sergeant in May 2016.


D.  Domestic Violence Incident and Plaintiff's Temporary Demotion

In November 2017, plaintiff and other deputies were attempting to locate and interview

a domestic violence victim who had been severely beaten by her spouse.  Plaintiff found the victim working at a dairy farm, alongside the spouse who had battered her.  The spouse was violating a temporary restraining order by working near the victim, but the owner of the farm wanted the victim and offender to continue milking the dairy cows.  Plaintiff called Assistant District Attorney John Sacia about the situation, and asked whether he could permit the offender to continue working and arrest him when he finished.  Sacia advised plaintiff that he did not see a problem with the suspect's finishing his shift and being arrested thereafter, in light of the fact that officers were going to be remaining on the scene.  (Sacia later stated that he would not have given plaintiff that advice if he had known the seriousness of the domestic violence incident.)  Plaintiff permitted the offender to continue working alongside the victim.

Another deputy complained to defendant Sheriff Anderson that plaintiff had permitted a domestic violence suspect to violate a no-contact order and continue working near a victim. Anderson ordered that an investigation of the incident be conducted, and he placed plaintiff on administrative leave without pay.  After investigating, Anderson concluded that plaintiff had not shown proper judgment for a sergeant, and that plaintiff should be demoted back to patrol deputy.  Anderson consulted with county corporate counsel, Rick Niemeier, who told Anderson that he had grounds to demote plaintiff.

Sheriff Anderson met with plaintiff on November 27, 2017.  (Plaintiff secretly recorded the conversation.)  Anderson told plaintiff that his judgment during the domestic incident created great liability for the county, showed bad judgment, and demonstrated a lack of leadership. Anderson explained to plaintiff that the police department was particularly sensitive to domestic violence incidents because, 20 years earlier, there had been a similar scenario

5

between a victim and an offender which resulted in the offender's killing the victim.  Anderson told plaintiff that because of the incident, he was demoting plaintiff to patrol deputy, but that plaintiff could earn his sergeant stripes back if he demonstrated better judgment in the future.

Plaintiff denied that he had exercised poor judgment.  He insisted that he was good at reading behavior and that he had known that the offender would not harm the victim.  Plaintiff stated that the complaint against him had been brought by deputies who were "trying to get to" him.  He stated that he had made "enemies" in the department because he had tried to change poor deputy behaviors after becoming a sergeant.  He blamed the incident on the "rumor mill."

Plaintiff also stated that the demotion was based in part on Anderson's knowing that plaintiff was running for sheriff.  Anderson responded:  "What is this running for sheriff?  I don't know that you are running for sheriff.  There's people saying this.  There's people saying he's running.  There's people saying I'm running.  That's got nothing to do with what we are doing here today.  Absolutely nothing."  At the time, plaintiff had not announced his candidacy for sheriff, and Anderson had only heard vague rumors about various people who might be running.  Anderson had already decided that he was not running for reelection.

Shortly after the meeting, Anderson issued a memo to other deputies advising them that plaintiff no longer held the rank of sergeant.  This was necessary, and it was standard policy because deputies needed to know who to report to in the chain of command.

### E.  Plaintiff's Announcement of his Campaign for Sheriff

Plaintiff had begun thinking about running for sheriff in September 2017.  Around that time, he started to increase his online and in-person profile, by posting pictures on Facebook,

taking steps to create a campaign website and giving presentations at community events.  In October 2017, defendant Chief Deputy Reinders told Sheriff Anderson that plaintiff's behavior suggested that plaintiff was lining himself up for politics in the future.

On November 29, 2017, two days after plaintiff was demoted to patrol deputy, he announced that he was running for sheriff in the Trempealeau County Times, a local newspaper. Plaintiff began writing letters to the editor in local newspapers, publishing Facebook messages and disseminating campaign material indicating that he intended to make changes in the management of the Trempealeau County Sheriff's Department.  Plaintiff discussed the drug problems in the county relating to methamphetamine and heroin.  He also talked about school safety, training, fiscal responsibility, and resource management.

Shortly after plaintiff's demotion, Sheriff Anderson heard that plaintiff had been campaigning at a restaurant.  Anderson telephoned one of the individuals who had been at the restaurant, and told the individual that plaintiff had been demoted.  (The parties dispute whether the individual asked Anderson about the demotion or whether Anderson brought the demotion up on his own.  Plaintiff also asserts that Anderson told the individual that plaintiff was a "bad guy" who should be avoided, but Anderson denies saying that.  These disputes are immaterial for summary judgment.)

On December 1, 2017, defendant Sergeant Brett Semingson asked for increased patrols in the "Hegg" area of the county, which is at the intersection of County Highways S and C. There had been traffic complaints and reports of methamphetamine being made in the area, including reports from plaintiff.  Hegg is 2.2 miles from where plaintiff lived, and plaintiff perceived that his home was being surveilled after he announced his candidacy for sheriff.

### F.  Plaintiff's Reinstatement as Patrol Sergeant

Plaintiff was the first sergeant that Sheriff Anderson had demoted and Anderson did not follow the correct statutory procedures in doing so.  Plaintiff objected to the demotion and, on December 17, plaintiff was reinstated to patrol sergeant, with backpay, by Trempealeau County human resources because Anderson had failed to follow statutory procedures in demoting plaintiff.  On December 21, 2017, Anderson issued a proper written notice of demotion that complied with statutory requirements.  Plaintiff requested a hearing before the County Personnel Committee to challenge his demotion.  A hearing on plaintiff's demotion was scheduled for February 1, 2018.

To prepare for the hearing, defendant Chief Deputy Reinders retrieved plaintiff's personnel file.  Reindeers found the CLEAR report and reviewed it for the first time.  Reinders was alarmed to read that plaintiff had been charged with sexual assault in South Carolina in 2007 and that the CLEAR report provided no information about how the charges were resolved. Reinders immediately notified Sheriff Anderson about the sexual assault charges.  Reinders also contacted Loesel, who had compiled plaintiff's background file, and asked him why he had not flagged the CLEAR report showing plaintiff's previous sexual assault charges.  Loesel responded that he had not noticed the sexual assault charges and that he had turned over the complete background investigation and CLEAR  report documents to Reinders because he knew that Sheriff Anderson had been eager to complete the hiring process.

Sheriff Anderson directed Captain Wayne Dahl to determine how the sexual assault charges had been resolved in South Carolina. The sheriff also told corporation counsel Niemeier about the charges.  Anderson was concerned about whether plaintiff had been honest during the

interview process and he was concerned about whether the information should be addressed at the upcoming hearing regarding plaintiff's demotion.

Around this same time, in January or February 2018, Sally Miller, a victim coordinator at New Horizons Shelter and Outreach Centers, reported to Attorney Niemeier that plaintiff had been arrested for sexual assault in South Carolina. Miller explained that she had learned the information from a victim and she had confirmed the information by contacting a newspaper in South Carolina. Miller stated that she had found no information about how the charges were resolved. Niemeier told Sheriff Anderson and Chief Deputy Reinders about Miller's disclosure.

Sheriff Anderson decided not to raise plaintiff's 2007 sexual assault charges at the February 1 hearing regarding plaintiff's demotion, because he did not have enough information. The County Personnel Committee considered the information about plaintiff's handling of the domestic violence incident and concluded that plaintiff should not be demoted to patrol deputy, but should have a two-week unpaid suspension.


G. Defendants' Investigation of Plaintiff and Plaintiff's Resignation

After the demotion hearing, Sheriff Anderson moved forward with the investigation into plaintiff's 2007 sexual assault charges. He asked Captain Dahl to get records about the arrest from South Carolina, and he also hired a private investigative firm to conduct an investigation. On February 28, 2018, Sheriff Anderson notified plaintiff that he was being placed on administrative leave pending an internal investigation.

Sheriff Anderson was concerned that plaintiff's sexual assault charges would need to be disclosed to the district attorney for impeachment purposes in future criminal prosecutions in

which plaintiff would be a witness.  Anderson asked Taavi McMahon, the district attorney for the county, to review any cases involving plaintiff.  Anderson asked assistant district attorney Sacia about whether he would be concerned about unsubstantiated complaints against plaintiff during the time he was a police officer in Chicago.  Anderson stated that the complaints had not resulted in discipline.  Sacia told Anderson that, based on the information he had presented, Sacia was not concerned.  Sacia also told Anderson that he should inform Sacia of any specific concerns he had about plaintiff's credibility.  (Plaintiff says that Anderson told Sacia that plaintiff was "no good."  Anderson denies saying this.)

The private investigator hired by the sheriff's department interviewed Lieutenant Loesel to determine whether plaintiff had disclosed his South Carolina criminal charges and whether Loesel had seen the CLEAR report.  Loesel answered that plaintiff had not disclosed the charge and that he had not seen the CLEAR report. The investigator then interviewed plaintiff, and asked plaintiff to identify all police contacts that he had had before he was hired.  Plaintiff identified a speeding ticket, a wrong-way driving ticket, and a previously undisclosed underage drinking ticket.  Plaintiff did not identify his 2007 arrest in South Carolina.  The investigator asked plaintiff about the woman who had accused plaintiff of sexual assault, and plaintiff responded that he was "not legally obligated" to answer the question.  (Plaintiff did not think he was obligated to answer questions about the 2007 arrest because his arrest record had been expunged under South Carolina law.)  The investigator told plaintiff that his refusal to answer would be considered insubordination and could result in his discipline or termination, but plaintiff continued to refuse to answer.

After the interview, the investigator reported to Sheriff Anderson that plaintiff had

10

refused to answer questions about the 2007 arrest and had disclosed an underage drinking ticket that he had not reported previously.  Anderson considered plaintiff's refusal to answer the investigator's questions as insubordination and he thought that plaintiff should be fired based on his dishonesty and refusal to answer questions.  Anderson gave plaintiff the option of resigning, but plaintiff refused to resign.  Anderson then moved forward with his recommendation that plaintiff be terminated.  Plaintiff was suspended immediately and without pay.

In May 2018, a hearing was held before the County's Personnel and Bargaining Committee on Anderson's termination recommendation. In a written decision, the committee rejected Anderson's termination recommendation and ordered that plaintiff be reinstated.  The committee wrote:

> Having heard the testimony and reviewed the evidence, the committee does not find just cause exists to terminate Sgt. Deeren. The committee concluded that Sgt. Deeren believed that due to the expungement of his arrest record he did not have to disclose those facts during his initial hiring and background investigation. The fact of the police contact in South Carolina was also disclosed to the County in the CLEAR report.  The committee was not able to conclude that Sgt. Deeren intended to be dishonest in the hiring process or during the investigation of these charges.

> The Committee also concluded that Sgt. Deeren believed he was justified in refusing to answer Investigator Meyer's questions during his interview due to his belief that he was not permitted to disclose the expunged records.  Whether Sgt. Deeren was correct in his legal conclusion does not affect whether he intended to be dishonest or held a belief that he could not disclose those facts.

> The Committee orders that Sgt. Deeren shall be reinstated forthwith.

Dkt. #71-1.

Sheriff Anderson sought to appeal that decision to the circuit court, but he was advised that only an employee, not the sheriff or county, had a right of appeal under Wis. Stat. § 59.26.

11

Despite being reinstated, plaintiff immediately resigned from his employment on May 4, 2018.

### H.  Election for Sheriff

After resigning, plaintiff focused on his campaign for sheriff.  Plaintiff told local news media that Sheriff Anderson had tried to fire him because he was running for sheriff and because he had failed to disclose information about a 2007 incident when plaintiff worked for the Chicago Police Department.  Plaintiff was running against defendant Brett Semingson, who was a life-long Trempealeau County resident and 25-year employee in the sheriff's department, and who had held the positions of deputy, sergeant, lieutenant and captain.

During the course of the campaign, private citizens and local media made public records requests for plaintiff's and Semingson's personnel files.  Semingson did not object to release of his records, and his personnel file was released in full.  Plaintiff sued to block the release of records relating to his 2007 sexual assault charge and the discipline for his dishonesty and insubordination related to the charge.  The court issued an order limiting the release of disciplinary documents and the county produced the documents of which the court had approved.  The county did not produce documents relating to plaintiff's awards and commendations, which had not been discussed during the court action.  Plaintiff did not object to what was produced to the requesters.

Plaintiff lost the campaign for sheriff and Semingson took office on January 7, 2019.

### I.  Plaintiff's Post-election Employment

After the election, plaintiff sought employment at two police departments in

12

Trempealeau County:  the City of Blair and the City of Osseo.  The members of the interview panel for the City of Blair unanimously rejected plaintiff as a candidate without requesting input from Sheriff Semingson, Chief Deputy Reinders, or the county.  At least one member of the interview panel thought that plaintiff was difficult to work with and did not take direction well.

Plaintiff also applied for a job with the City of Osseo Police Department.  Chief Bill Prudlick, who had supported plaintiff during the sheriff's campaign, hired plaintiff as a reserve officer.  After he did so, he stopped into defendant Sheriff Semingson's office to discuss his hiring of plaintiff.  Semingson told Prudlick that he was concerned about plaintiff becoming a patrol officer in light of plaintiff's negative approach during the campaign.  (Plaintiff had released ads during the campaign accusing Semingson of supporting a "child sex predator cop" and of permitting someone with a 20-year old drug offense to work on his campaign.) Semingson told Prudlick that he was concerned about plaintiff's having access to personal information in the county's law enforcement database that he could manipulate and he told Prudlick that he would turn off the City of Osseo's access to the county's information database if plaintiff acted as a patrol officer.  Later that day, Prudlick emailed Semingson to say that he would not use plaintiff as a patrol officer, but that he would employ plaintiff as a training officer. Semingson had no concerns about plaintiff's holding that role, and raised no further objections to plaintiff's working for Osseo.


OPINION

Plaintiff raised four claims in his amended complaint:

(1) First Amendment retaliation against all defendants;

13

(2) intentional inference with a contractual relationship, against Semingson and Reinders;

(3) injury to business under Wis. Stat. § 134.01 against Semingson and Reinders; and

(4) blacklisting of employees under Wis. Stat. § 134.02 against Semingson and Reinders.

Defendants have moved for summary judgment on all plaintiff's claims.  To succeed on their motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, defendants must show that there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law.

## A.   First Amendment Retaliation

Plaintiff contends that defendants retaliated against him for exercising his First Amendment right to campaign for sheriff against defendant Semingson.  He identifies the following as acts of retaliation by defendants: demoting him to patrol sergeant; disclosing his demotion to other deputies and community members; increasing patrols around his neighborhood; disclosing his 2007 arrest to community members; attempting to terminate his employment; failing to disclose plaintiff's awards and commendations to the community; and conspiring to prevent him from securing employment after he lost the election.  To succeed on his First Amendment retaliation claims, plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter a person of ordinary firmness from engaging in First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the alleged retaliatory actions.  McGreal v. Village of Orland Park, 850 F.3d 308, 312 (7th Cir. 2017); Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011); Bridges v. Gilbert, 557 F.3d 541,

14

546 (7th Cir. 2009).

Plaintiff has submitted sufficient evidence to create a genuine factual dispute with respect to the first element of his retaliation claims.  In particular, plaintiff's speech in support of his campaign for sheriff was constitutionally protected.  As for the second element of his claim, some of the actions identified above, including plaintiff's demotion and Sheriff Anderson's termination recommendation, would deter a person of ordinary firmness from engaging in First Amendment action in the future.  However, as discussed below, defendants argue that some of the other actions about which plaintiff complains are not sufficient to support a First Amendment claim.  In addition, defendants argue that plaintiff cannot satisfy the third element of his retaliation claim, because he cannot show that his First Amendment protected activity was a motivating factor in defendants' decisions to take adverse actions against him.  I will discuss the parties' arguments with respect to each of defendants' alleged acts of retaliation below.

1.  Plaintiff's demotion

Defendants argue that Sheriff Anderson demoted plaintiff to patrol deputy because plaintiff mishandled a domestic violence incident, and not because plaintiff was running for sheriff.  The undisputed facts support defendants' argument.  At the time that Anderson decided to demote plaintiff, plaintiff had not yet announced his candidacy for sheriff.  It is clear from the recording of the November 27, 2017 meeting that plaintiff did not tell Anderson that he intended to run for sheriff until after Anderson had told plaintiff that he was being demoted.  Although Chief Deputy Reinders suspected, prior to the demotion meeting, that plaintiff might intend to pursue politics in the future, plaintiff has submitted no evidence that would prove that

15

either Reinders or Anderson knew that plaintiff intended to run for sheriff.  Thus, Anderson's demotion decision was not motivated by any protected speech by plaintiff.  Kuhn v. United Airlines, Inc., 640 F. App'x 534, 539 (7th Cir. 2016) ("At a minimum, a causal connection requires that the relevant decision-makers were aware of the protected activity at the time they took the adverse action.").

Plaintiff's arguments to the contrary are based purely on speculation.  Weaver v. Champion Petfoods USA Inc., 3 F.4th 927, 936 (7th Cir. 2021) (" A party must present more than mere speculation or conjecture to defeat a summary judgment motion.").  He argues that Sheriff Anderson failed to follow proper statutory procedures when demoting plaintiff. However, it is undisputed that Anderson had never demoted a sergeant before and that he consulted counsel before doing so.  In addition, Anderson's failure to follow statutory procedure does not support an inference that Anderson's actions were retaliatory.  After Anderson learned that he needed to provide plaintiff a written notice of demotion, he did so, and he continued to stand by his decision to demote plaintiff.

Moreover, defendants have identified a legitimate, non-retaliatory reason for plaintiff's demotion:  plaintiff's mishandling of the domestic violence incident, during which he permitted an individual who had severely battered his spouse to violate a 72-hour no-contact order and work next to the victim for several hours.  There is no dispute that plaintiff's subordinates reported their concerns to Sheriff Anderson about how plaintiff had handled the incident, and that Anderson thought that plaintiff had shown extremely poor judgment and had put the county in a vulnerable position.  And although plaintiff disagrees with Anderson's assessment of his actions during the domestic violence incident, he has not submitted evidence suggesting

16

that Anderson's concern was pretextual or false.  Milliman v. Cty. of McHenry, 893 F.3d 422, 431 (7th Cir. 2018) (to show that employer's proffered reason for adverse decision was pretextual, plaintiff must submit evidence showing that employer did not honestly believe proffered explanation); Zellner v. Herrick, 639 F.3d 371, 379 (7th Cir. 2011) (plaintiff must "produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie").

2.  Sheriff Anderson's disclosure of plaintiff's demotion

Defendants next argue that plaintiff has not submitted evidence showing that Anderson's disclosure of plaintiff's demotion to the sheriff's department and a community member were retaliatory in violation of the First Amendment.  I agree.  It is undisputed that Anderson followed policy in disclosing plaintiff's demotion to the sheriff's department, so that other deputies in the department would know to whom they should report in the chain of command. As for Anderson's purported conversation with a community member about plaintiff's demotion, Anderson was disclosing a fact regarding a candidate for public office.  Even if Anderson told the community member that plaintiff was a "bad guy" who should not be supported, as plaintiff alleges, Anderson's expression of his opinion regarding plaintiff's suitability for sheriff is not sufficient to support a First Amendment claim.  See, e.g., Werkheiser v. Pocono Township, 780 F.3d 172, 181 (3d Cir. 2015) (First Amendment not intended to "guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics"); Nordstrom v. Town of Stettin, No. 16-CV-616-JDP, 2017 WL 2116718, at *4 (W.D. Wis. May 15, 2017) ("more is fair in electoral politics than in other contexts")(citation omitted);

17

<u>Footit v. Van De Hey</u>, No. 04-cv-459, 2005 WL 1563334, at *6 (E.D. Wis. June 29, 2005) (concluding that the plaintiff failed to state a retaliation claim against his fellow board members when "[t]hey simply reported to the district attorney their suspicions that Footit had violated the law and asked him to investigate").

3.   <u>Patrols in Hegg area</u>

Third, defendants argue that plaintiff cannot show that the increased patrols in the Hegg area of the county were in retaliation for his sheriff campaign.  Defendants point to evidence showing that there had been traffic complaints and reports of drug activity in the area and that plaintiff's residence is not even located in the area that was targeted.  Defendants' argument is persuasive.  Plaintiff says he perceived an increase in patrols in his neighborhood after he announced his campaign, that he felt as if he was being surveilled and that he worried about the safety of his friends and family.  However, he has submitted no evidence connecting his perception of increased patrols and fears for his safety to defendant Semingon's request for patrols in the Hegg area.  Nor has he submitted evidence refuting defendants' evidence that the sheriff's department had legitimate law enforcement interests in the Hegg area.

4.   <u>Disclosure of plaintiff's arrest record</u>

Defendants argue that plaintiff has failed to show that defendants disclosed information about his 2007 arrest to community members in retaliation for his candidacy for sheriff. Defendants have submitted evidence showing that they discussed plaintiff's arrest internally for purposes of investigation and to support Anderson's termination recommendation.  However,

18

such internal discussions did not violate the First Amendment.  Defendants had a legitimate basis for investigating plaintiff's sexual assault charges based on the information contained in the CLEAR report: plaintiff had not disclosed his arrest, and there was no information in the report about how the charges had been resolved.

Plaintiff has submitted no evidence showing that defendants disseminated information about plaintiff's arrest and sexual assault charges to community members generally.  Defendants deny that they discussed plaintiff's arrest with anyone except those involved in the investigation and those who were aware of it already, including Sally Miller, the victim coordinator at New Horizons Shelter and Outreach Centers, who learned of the information independently of defendants.  Moreover, as I stated in a previous decision in this case, plaintiff's allegations that defendants leaked his dismissed South Carolina criminal case to the public in order to undermine his candidacy for sheriff, are simply complaints about the realities of electoral politics, and are insufficient to state a First Amendment retaliation claim.  Deeren v. Anderson, 518 F. Supp. 3d 1271, 1277 (W.D. Wis. 2021).

5.  Sheriff Anderson's termination recommendation

Defendants argue that plaintiff cannot refute the fact that Sheriff Anderson recommended that plaintiff be terminated because of his dishonesty and insubordination, not because he was running for sheriff.  I agree.  Anderson hired a neutral investigator to determine whether plaintiff had been truthful in his preemployment disclosures.  Plaintiff lied when he told the investigator that he had had only three prior contacts with law enforcement, and then refused to answer questions about his police contact in South Carolina in 2007.  Anderson

found that plaintiff's refusal to answer questions amounted to dishonesty and insubordination and he concluded that plaintiff should be terminated as a result.

Plaintiff argues that Anderson's explanation for his termination recommendation is pretextual because the county had known about plaintiff's 2007 arrest since 2015, before it hired plaintiff, at the time it received the CLEAR report.  He contends that a reasonable jury could conclude that the county "sat on the information in case it needed it, in the future, to discredit" plaintiff.  Plt.'s Br., dkt. #75, at 13.  But this argument has no support in the record. Plaintiff has submitted no evidence to refute the statements by Loesel and Reinders that they erred by failing to review the CLEAR report before plaintiff was hired.  And no reasonable jury could conclude that the county knew that plaintiff had been charged with sexual assault but failed to determine the outcome of those charges before hiring plaintiff as a sheriff's deputy.  The only reasonable conclusion supported by the evidence, and not based purely on speculation, is that the county did not learn about plaintiff's arrest history until Reinders reviewed the report in December 2017.

Plaintiff also argues that because his 2007 arrest was expunged under South Carolina law, he was prohibited from discussing the arrest and he was justified in refusing to answer the private investigator's questions about it.  He also argues that the investigator's questions were illegal under Wisconsin law.  However, whether South Carolina or Wisconsin law permitted plaintiff to withhold information about his arrest is immaterial to the outcome of plaintiff's First Amendment claim.   What matters is whether Anderson recommended that plaintiff be terminated because he withheld information about his arrest or whether Anderson recommended termination because plaintiff was running for sheriff.  Milliman, 893 F.3d at 431 ("An

20

employer's reasons for firing an employee can be foolish or trivial or even baseless, as long as they are honestly believed.")(citation and internal quotation marks omitted).  Anderson thought that, as a sheriff's deputy, plaintiff should answer questions posed to him and that his failure to do so amounted to intolerable dishonesty and insubordination.  No reasonable jury could conclude that Anderson wanted to terminate plaintiff's employment for any reason other than his refusal to provide honest answers to questions about his 2007 arrest.

6. Plaintiff's personnel file

Defendants argue that plaintiff cannot prove that defendants failed to release information about plaintiff's awards and commendations in response to public records requests from media and community members.  Again, defendants' argument is persuasive.  The undisputed evidence shows that plaintiff sought a court order limiting what could be disclosed to the public from his personnel record.  Defendants complied with the court order by releasing the specific documents that the court approved and plaintiff made no objections to the documents released.  Nor did plaintiff request that additional documents be released.  Moreover, plaintiff had access to his own personnel file and could have provided copies of his awards or commendations to requesters.  Thus, not only has plaintiff failed to show that defendants' limited disclosures were motivated by retaliatory intent, he has failed to show that the limited disclosures were sufficiently adverse to support a First Amendment retaliation claim.

7. Interference with plaintiff's future employment

Finally, defendants argue that plaintiff cannot show that they conspired to prevent him

21

from securing employment after he lost the election for sheriff.   Again, defendants' argument is persuasive.  They submitted unrefuted evidence that no defendant was even contacted when plaintiff applied to be a police officer for the City of Blair.

As for the City of Osseo, plaintiff has not shown that Semingson's concerns about plaintiff's access to the county law enforcement database were motivated by plaintiff's run for sheriff, which had concluded months earlier.  Instead, the evidence shows that Semingson was concerned about plaintiff's acting as a patrol officer with access to information about other officers because of his impressions of plaintiff's history of dishonesty, conflict, and negativity during the campaign, including his suggesting that Semingson supported sex offenders and drug abusers.  The fact that Semingson did not object to plaintiff's employment with Osseo in other capacities further undermines plaintiff's argument that Semingson's conversation with the Osseo chief of police was retaliatory.

## C.   State Law Claims

Plaintiff also pleaded state law claims for tortious interference with a contract, injury to business, and blacklisting of employees. The general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); Jauquet v. Green Bay Area Cath. Educ., Inc., 996 F.3d 802, 812 (7th Cir. 2021. Because I am granting summary judgment to defendants on all of the federal claims, I will decline to exercise subject matter jurisdiction over plaintiff's state law claims. Those claims will be dismissed without prejudice.

ORDER

IT IS ORDERED that:

1.  Plaintiff Kevin Deeren's motion to clarify the record, dkt. #89, is GRANTED.

2.  Plaintiff's motion for leave to file a sur-reply, dkt. #90, is DENIED.

3.   The motion for summary judgment filed by defendants Richard Anderson, Brett Semingson, Harlan Reinders and Trempealeau County, dkt. #36, is GRANTED with respect to plaintiff's First Amendment claims.

4.  The court declines to exercise supplemental jurisdiction over plaintiff's state law claims. Those claims are DISMISSED WITHOUT PREJUDICE.

Entered this 1st day of December, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

23